Good afternoon, your honors. I'm Robert Kelleher, Jr., for the appellant Gerhard Stern, who is also the defendant, and I was trial counsel as well. And if I may, the issue here, of course, is whether the sister's testimony should have been admitted, whether that was an abuse of discretion. There's a five-prong test. And if I may, I'd like to skip ahead to prong number three. First, let me ask you, there's no question that the trial judge understood that this was the test to apply. He cited the right case and numbered the factors, right? Yes, the judge understood that the LeMay case and the Glanzer case was the test. Okay. But my position is, and I think I didn't really pick up on this nuance myself at the time we argued this pretrial, that I think the court may not have applied factor number three correctly, which is the frequency factor. The way it was argued is that Gerhard Stern had allegedly sexually abused his sister more than once, and then he had sexually abused his daughter more than once, and that satisfied the frequency prong. But as I go back now and read LeMay and Glanzer, it appears that that frequency prong actually means was there more than other victims. Well, when the issue is whether someone is willing to overcome the normal aversion to incest, how many victims do there have to be for it to be sufficiently frequent? Well, I would say that in this case, because there's only two, and I say only, but there are two victims. They're 20 years apart, and Mr. Stern was approximately 13 at the time of the first one, that there should have been a greater showing of more. What authority do you have that says that frequency is determined solely by the number of victims rather than the number of events of criminal behavior? Well, in reading LeMay, the court in LeMay pointed out that there was a third victim, a third incident who was not brought in because the judge didn't want to overpopulate the list of witnesses and increase the prejudice. And this is not a published opinion, but in Bird's bill, apparently there was two other victims that were not brought in for the same reason. And so I'm reading that to mean that that's the test, that there's more than just two victims. What other evidence was there? Why was this so critical? Well, I mean, the government will argue, of course, that element number five, which is that we need this because the victim was very young. She was only six years old when she testified. And that was pretty much it. There was no other physical evidence. But the government had a strong case that this little girl, this six-year-old girl, spontaneously came out with this allegation when she was being inspected by the school nurse for headlights out of nowhere without any prompting. And she was a good little witness for the government, I have to say. Well, you know, you're arguing it's cross-purposes here because ordinarily you would be saying the opposite. You'd be saying, oh, my goodness, without this evidence, my client would never have been convicted. And the government says, no, no, it would be totally harmless. And you're sort of arguing each other's case in this instance, where you're saying they had a tremendously strong case. This was completely unnecessary. And the government is saying the opposite. They've not made a harmless error argument here. You're making a harmless error argument, in effect, is what you're saying. Well, and I realize that there's a line there, Your Honor, and I'm trying not to cross over into the harmless error argument. But what I'm saying is that there was enough evidence on the part of the government that they didn't need this additional evidence from the sister. And I can only say, having been there during the trial, that the evidence, the testimony from the sister was so emotional that it was devastating. And I don't think my client was able to get a fair trial based on the fact that that came in and it was an abuse of discretion to allow that in. It was just not necessary under the fifth prong. And the other prongs militate against it. If I could address the closeness in time quickly, just to put that in perspective, there was a 20-year time lapse between when the sister apparently was molested at age 8 or 9 and when the daughter was molested. When the sister testified, she was 29 years old. In Montana, we have, I believe, a fairly liberal statute of limitations for prosecuting child sexual abuse cases, which is 10 years. Well, that's not pertinent here because he was actually held to account for having sexually molested his sister. I'm not saying that there's a statute of limitations issue in here. I'm saying as a matter of putting this time gap in perspective. What about the other similarities, though? You have two instances of incest, which, you know, maybe not frequent, but that's a lot of incest, and that's a similarity. You have very young victims. You have similar nature of acts. You have at least an argument that the evidence is necessary for the presentation of the government's case. In view of that, what do you have that really is an abuse of discretion rather than just a disagreement with the way it came out? Well, I think the two factors, the second prong and the third prong especially gravitate toward abuse of discretion. Getting back to the statute of limitations, my client could not have been prosecuted under Montana law for this abuse of his sister at the time she testified, and that just shows how far in the past this incident was, and that's too far in the past to have it admitted. And then that there were no other victims and the frequency prong was not satisfied is another reason. And as far as the similarity, it's true that there were young victims and they were related, but the daughter stated there was only evidence of oral copulation with the daughter, whereas the sister basically went to the whole gamut, including fours, which made those two cases dissimilar, and adding all those other factors, I think, increased the prejudice, I don't know if that's even possible, but increased the prejudice against my client. And for all of those reasons, the judge abused his discretion. I'd like to reserve the rest of my time for rebuttal, if I may. May it please the court and counsel. My name is Marcia Hurd, and I'm from the U.S. Attorney's Office in the District of Montana. I handled the trial and wrote the appellate brief. I think that this panel has squarely hit the nail on the head here. It is almost a harmless error argument that's being made, which is this little girl did such a great job that the government didn't need to put the sister on to testify about the sexual abuse, and that he would have been convicted anyway. It makes an interesting twist to the notion of the LeMay test, and the fact that one of the things that this court must look at, and the district court must look at, is the need for this evidence at trial. And the district court in this case did exactly what the LeMay court said it needed to do. It waited for a period of time, had the government put on its entire case before it got there. It did a standard 403 balancing test and found that the prejudice, the probative value versus the danger of unfair prejudice weighing that it was supposed to under LeMay. It looked at all of those, the five-factored test from LeMay, and found that this was admissible evidence. And so the district court made no error here. The standard of review is an abuse of discretion, which is a highly differential standard. If it was necessary to have this evidence submitted without it, you probably would not have gotten a conviction. I think it's always difficult in a case like this in front of a jury. You never know what a jury is going to think of a six-year-old who used some terms that weren't accurate in trying to describe what happened to her. And then the argument made in opening and again in closing was, you never know what six-year-olds will say. Basically, that was the challenge. And the defendant got up and testified at length that both his sister was a liar, his daughter was a liar, and that he had never done these things, even though he pled guilty to sexually abusing his sister. And so certainly the need for the evidence at the trial is one factor to be considered. And I think it was necessary in this case for the jury to be able to look at both of those things, especially when the defendant testified and testified very forcefully, that he wanted his daughters there, that he never touched them, never harmed them. So without the fifth factor, the second factor, closeness in time, where does that help? The closeness in time kind of cuts both ways, because we've got cases in the Ninth Circuit that go, the LeMay case itself was about 11 years, if I recall, up to 15 years. Some other circuits go up to 30 years for closeness in time. I don't know what isn't closeness in time in that case. Everything is closeness in time. Right. And the closeness in time here was that this defendant spent a big chunk of that time, almost half of it, in custody, either at Pine Hill School for Boys, serving his time for sexually abusing his sister, and then serving time at the Montana State Prison, plus two revocations of that for various burglaries and other charges. So of the 20 years that separated the two events, he was incarcerated for more than half of that period of time. What does frequency of prior acts mean? Does that mean if you had, in the prior occasion, if he abused his sister five times, that's frequency? Or does it mean separate occasions? Well, I think it can mean both. I don't think the LeMay case was specific about what that meant. In the LeMay case, there was a third victim, and the judge did not allow the testimony in that case. The government actually decided not to put it on. But I think it can mean both things. If you have a one-time incident versus a, you know, say two- or three-year pattern of repeated daily, weekly kinds of things. But it also can go to the number of intervening victims between the different times that that has occurred. And in this case, the judge looked at it as it was a pattern of events with his sister over a period of time, and it was a pattern of events with his daughter over a period of time. And I think it was pretty clear that was how the court looked at it in this case. The court also did what the LeMay case said to do, which was to have the 403 balancing test followed. Very carefully went through all of that, understood LeMay, weighed those factors, balanced the 403 test. And they don't have to be exactly the same. I mean, the argument is, well, it was only oral sex with the child, and it was, you know, forced copulation and other things with his sister. The bottom line is this is a man who committed incest on numerous occasions with family members. Do you think it makes a difference that at the time of the incident with his sister, he was 13 years old, and at this time he's now matured into an adult, and he's, what, 30 years old? I think the only thing that it shows – Does that count for anything, one way or the other? I don't think that it does. I mean, because in LeMay, he was 12 when the first incident occurred, and he was 22 when he allegedly sexually – or was convicted of sexually abusing the other two little boys. And so, if anything, it shows that this is a person who has a longstanding history and a preferential pattern for related female children to be sexual partners with him for whatever reason. So I don't think that that is a factor of concern that he was a juvenile when it – when it occurred and he was an adult when the other occurred. Do you think it's the government's position that the necessity factor would likely trump all the other factors? No, not at all. I think – Is that what happened here? I don't think so. I think that the court looked pretty carefully at all of the factors, the fact that, you know, that it was related victims, that it was female children, that the events were somewhat similar, and that there wasn't really a trumping of that factor. And I think in the LeMay case, in your concurring and dissenting decision, you indicated that there was also another case, and I believe it was the Tenth Circuit case in Njaadi, that you cited in the LeMay concurrence and dissent that talked about a number of other factors that even could be considered. And I think that the main opinion in LeMay indicates that this list of factors is not exhaustive. You know, the Njaadi case that you cited talked more about how clearly the other act had been proven, and here we had the sister came forward and testified. And I have to disagree with what's being alleged as the devastating prejudicial effect of her testimony. I mean, she was on the stand for a short period of minutes. I mean, her testimony is about five pages double-spaced within the trial transcript with one cross-examination question.  It looks like it was a pretty emotional testimony. Well, it was emotional in the sense that she teared up and was starting to cry and said, I'm sorry, and then we went on to other questions. But it wasn't like she sobbed on the stand and had to be helped off or anything like that. And so, I mean, I think that the opinion in LeMay makes the comment that the evidence of the defendant's prior acts of molestation will always be emotionally charged and inflammatory, and that's not dispositive in and of itself. So I think the judge did exactly what it was supposed to do, and I think that this panel has hit the nail on the head. There's been no showing by the defense of any sexual assault. We haven't hit any nails yet. Well, in some of the commentary that you've made, I think that there's not really showing here. What's prejudice? I think on both sides a hard time. Unless there's anything else from the panel, Ben, I will go ahead and rest on my time. Thank you very much. Thank you. Just a few comments, Your Honor. It occurred to me while I was sitting there that I don't think as a matter of principle that evidence under 414 could ever be harmless. And if the court looks at the transcript, it's a cold transcript, but I assure the court that the sister was breaking down. She had to take pauses. It was highly, highly emotional for the jury to hear that. And the question is whether it was necessary or not, and I submit that it was not necessary. It did not satisfy the fifth prong. And as far as the closeness in time, he was 13. Apparently when he said he pled guilty, he went to Pine Hills for five years, and then he spent about 36 months. That's the juvenile facility in Montana. And then he spent about 36 months in prison, according to the records check that was done by the Tennessee Department of Family Services, when he went down there to get these kids back from their mother. So that's about eight years that he was in custody, which gave him 12 years, I suppose, the math is that he could have done other things to other kids. And the Tennessee Department of Family Services did a very thorough background check. Is there anything to indicate that he had access to young female family members during that period of time? I mean, in a sense, frequency has to have to do with opportunity if there was a particular pattern of behavior. If someone's a bank robber but they're in a town with no banks, maybe that's not as significant. I can't remember if he had custody of his children for a while before the wife. I think he and his wife, obviously they were together when they had the children, and at some point they split up and she went to Tennessee. And I can't remember the exact time frame there, but there would have been a period of time when they were all living together after the children were born. And there were no allegations of any abuse by him at that time. And he passed the background check with the Tennessee Department of Family Services, which, as the court can imagine, is pretty thorough. So the closeness in time is in our favor, and the frequency, I believe, is in our favor. And the only thing that really helps the government is the necessity, which is not there. And it should have just been a fair one-on-one trial with him and the alleged victim. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted.
judges: Reinhardt, Graber, Paez